ORIGINAL

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| CINGULAR PENNSYLVANIA, LLC, | : | |
| Plaintiff, | : | |
| v. | : | |
| SUSSEX COUNTY<br>Sussex County Courthouse<br>1 The Circle<br>Race and Market Streets<br>Georgetown, DE | : | No.  05 - 383 |
| and | : | |
| BOARD OF ADJUSTMENT OF<br>SUSSEX COUNTY<br>Sussex County Courthouse<br>1 The Circle<br>Race and Market Streets<br>Georgetown, DE | : | |
| Defendants. | : | |

## COMPLAINT

Cingular Pennsylvania, LLC ("Cingular") asserts the following claims against Sussex County ("County") and the Board of Adjustment of Sussex County ("Board of Adjustment"):

### The Parties

1. Cingular Pennsylvania, LLC is a limited liability company formed under the laws of the State of Delaware with a registered address of 2711 Centerville Road, Suite 400, Wilmington, Delaware, and its principal place of business at 15 E. Midland Avenue, Paramus, NJ 07652.

2. The County is a political subdivision of the State of Delaware located in Sussex County, Delaware. As such, it is a citizen of Delaware.

521903 1 6/10 05

3.   The Board of Adjustment is an instrumentality of the County created pursuant to 9 Del. C. §§ 6913 and 6917, with its principal place of business in Sussex County, Delaware. As such, it also is a citizen of Delaware.

### Jurisdiction and Venue

4.   Jurisdiction over the subject matter of this action is founded upon: (a) 28 U.S.C. §§ 1331 and 1337, with respect to Count I, which is a dispute arising under the Telecommunications Act of 1996, 47 U.S.C. § 332(c); (b) 28 U.S.C. §§ 1331 and 1343, with respect to Count II, which is a dispute arising under state law that is part of the same case or controversy as the federal question claims asserted in Count I.

5.   Venue is proper in the District of Delaware under 28 U.S.C. § 1391(b), because the property affected is in, the acts complained of occurred in and the defendants are located in this district.

### Background

6.   Cingular provides personal communications services ("PCS") over a network of wireless telecommunications facilities, pursuant to a license from the Federal Communications Commission ("FCC"). PCS is a new generation of wireless technology that uses digital transmission to improve the quality, reliability and variety of communications services.

7.   Under FCC regulations, Cingular operates its wireless telephone service for the general public as a common carrier.

8.   Portable telephones using PCS digital technology operate by transmitting a very low power radio signal between the telephone and antennas mounted on towers, poles, buildings or other structures. The antennas feed the signal to electronic radio devices housed in equipment cabinets, where the signal is connected to telephone lines and then routed

anywhere in the world. An array of antennas and their equipment cabinets are commonly known as a cell site, and the surrounding area they serve is called a cell.

9. In order to provide continuous service to a PCS telephone user, there must be a series of overlapping cells in a grid pattern approximating a honeycomb. Otherwise a PCS telephone user could not have an uninterrupted conversation when traveling throughout a given territory. If the user enters an area that is not within a functioning cell, the customer will experience unreliable service including frequent inability to place or receive calls, dropped calls, and interrupted, inaudible or unintelligible communications.

10. Cingular's engineers use complex computer programs to complete a propagation study, which shows where a cell site needs to be located within a cell, based on the boundaries of the cell, the topography of the land, physical obstructions and other factors.

11. In order for the entire system to be operational, there must be enough cells with properly placed cell sites installed and functioning so that complete coverage can be realized. Because of the low power of portable telephones, the distance from such a telephone to a cell site needs to be relatively short, often less than two miles. Only when the entire system is operational will a PCS telephone user have uninterrupted service while traveling throughout a given territory.

12. Within this area of Sussex County, along Routes 1 and 9, there is a significant gap in coverage. In order to provide PCS telephone service to areas, Delaware, Cingular proposed to erect a telecommunications monopole ("Monopole") on certain lands of Brenner-Vincent located on Sweetbriar Road in Broadkill Hundred, Lewes. The Monopole would consist of a 150 foot high cylindrical steel pole containing an array of antennas at the top, connected to equipment cabinets which would be located at the base of the Monopole.

13. The Monopole would be located in an "AR-1" (Residential) Zoning District. Such facilities are permitted pursuant to a Special Use Exception, under Article XXV, §194.2 of the Sussex County Zoning Code ("Code") where the Monopole proposed to be erected will be located in a residential zoning district.

14. Accordingly, on January 31, 2005, Cingular filed an application with the Board of Adjustment ("Application"), requesting a Special Use Exception to erect the Monopole.

15. On March 7, 2005, the Board of Adjustment held a hearing (the "Hearing") to consider the Application.

16. The standard for the Board of Adjustment to apply in determining whether to grant a Special Use Exception is whether the use will substantially affect adversely the uses of adjacent and neighboring properties.

17. The County opposed the Application because it claimed that the proposed location of the Monopole failed to meet the requirements for a Special Use Exception in that the use was not compatible with the character of the land in the immediate vicinity and that there was no need for the Monopole.

18. Cingular's witnesses provided substantial evidence at the Hearing that it met the requirements for a Special Use Exception and that there were no alternate sites available within its search ring to cover the significant gap in service.

19. Nevertheless, on March 21, 2005, the Board of Adjustment voted to deny Cingular's Application. A written decision filed with the Board of Adjustment on May 11, 2005 ("Decision") is attached hereto as Exhibit A.

20. The Decision was based upon erroneous findings of fact and conclusions of law.

21. The Board of Adjustment concluded that the proposed Monopole would not be compatible with the character of the area and that it did not believe that there was a need for the Monopole. No expert testimony was offered by opponents to the Application as to the impact of the Monopole upon the character of the immediate area or the need for the Monopole.

22. The Decision is not supported by substantial evidence.

23. The Monopole is the least intrusive means of closing a significant coverage gap.

## COUNT I
## TELECOMMUNICATIONS ACT

24. Paragraphs 1 through 23 are incorporated herein by reference.

25. Section 704 of the Telecommunications Act of 1996 governs federal, state and local government oversight of the placement and erection of "personal wireless service" facilities such as the Monopole that was the subject of Cingular's Application. It provides in pertinent part as follows:

> (i)  The regulation of the placement, construction, and modification of personal wireless service facilities by any State or local government or instrumentality thereof --
>
> \*      \*      \*
>
> (II)  Shall not prohibit or have the effect of prohibiting the provision of personal wireless services.
>
> \*      \*      \*
>
> (iii)  Any decision by a State or local government or instrumentality thereof to deny a request to place, construct, or modify personal wireless service facilities shall be in writing and supported by substantial evidence contained in a written record.
>
> \*      \*      \*
>
> (v)  Any person adversely affected by any final action or failure to act by a State or local government or any instrumentality thereof that is inconsistent with this subparagraph may, within 30

days after such action or failure to act, commence an action in any court of competent jurisdiction. The court shall hear and decide such action on an expedited basis.

47 U.S.C. § 332(c)(7)(B).

26. The County and the Board of Adjustment violated Section 704 of the Telecommunications Act of 1996 because: (a) the denial of Cingular's Application had the effect of prohibiting the provision of personal wireless services. 47 U.S.C. § 332(c)(7)(B)(i).

27. The denial of Cingular's Application also violated Section 704 of the Telecommunications Act of 1996 because the Decision is not supported by substantial evidence in the written record, contrary to 47 U.S.C. § 332(c)(7)(B)(iii).

WHEREFORE, Cingular respectfully requests this Court to direct the Board of Adjustment and the County to permit Cingular to erect the Monopole in accordance with the Application and its accompanying plans; and to award such further relief as the Court deems appropriate and just.

## COUNT II
## STATE LAW ZONING APPEAL

28. Paragraphs 1 through 27 are incorporated herein by reference.

29. The Board of Adjustment's Decision was an error of law and was arbitrary, capricious and an abuse of discretion, because:

(a) The evidence presented, complied with all of the requirements of Article XXV §194.2 of the Sussex County Zoning Code pertaining to Special Use Exceptions;

(b) No evidence was presented that would justify denial of the Application on any grounds recognized as legitimate under Delaware law;

(c) The Board of Adjustment erroneously concluded that the erection of the Monopole would be incompatible with the character of the immediate area;

(d) The Decision was not supported by substantial evidence;

(e) The Board of Adjustment failed to permit the proposed Monopole despite the fact that federal law required it to be permitted.

WHEREFORE, Cingular respectfully requests this Court to reverse the Decision, direct the County and the Board of Adjustment to permit Cingular to erect the proposed Monopole as requested in the Application, and grant such further relief as the Court deems appropriate and just.

SAUL EWING LLP

/s/ Michael Bonkowski
Michael Bonkowski, Esquire
Attorney I.D. No. 2219
222 Delaware Avenue
P.O. Box 1266
Wilmington, DE  19899-1266
Telephone: (302) 421-6863
Facsimile: (302) 421-5869

Attorney for Cingular Pennsylvania, LLC

Dated: June 10, 2005

# EXHIBIT A

COUNTY BOARD OF ADJUSTMENT
OF SUSSEX COUNTY
GEORGETOWN, DELAWARE 19947

*Phone (302) 855-7878*

DALE A. CALLAWAY

RONALD G. McCABE

LAWRENCE B. LANK

JOHN M. MILLS

JEFFREY M. HUDSON

E. BRENT WORKMAN

May 11, 2005

Cingular Pennsylvania LLC
C/O Pamela Scott, Saul Ewing LLP
222 Delaware Ave #1200
Wilmington, DE 19801

Dear Sirs:

This is to advise that the formal written decision in Case No. 8990 was filed with the Board of Adjustment on May 11, 2005. Please remember that although the decision is now final, an appeal is possible up to thirty days following the date of filing.

Any work done prior to the expiration of the appeal period or during an appeal, is at risk. Nevertheless, if you wish, you may now begin the process of obtaining permits, if any are needed. Obtaining those permits may require payment of fees. Please call the Permit Department at 302-855-7720 prior to applying for any permits, in order to make certain that you have all necessary documentation. It is important that you inform the counter clerk of the above-referenced case number when you apply for a permit.

If the Board has ruled against you, you must comply with the Board's decision within thirty days of the date of filing. In order to avoid enforcement action, you should notify the office once you are in compliance.

Should you have any questions about you legal rights, you are advised to contact an attorney, as this office cannot provide legal advice.

Sincerely,

Norman Rickard
Secretary to the Board

BEFORE THE BOARD OF ADJUSTMENT OF SUSSEX COUNTY

IN RE:    CINGULAR PENNSYLVANIA, LLC                Case No. 8990 – 2005

A hearing was held after due notice on March 21, 2005. The Board members present were: Mr. Callaway, Mr. McCabe, Mr. Mills, Mr. Workman and Mr. Hudson.

### Nature of the Proceedings

This is an application for a special use exception to erect a telecommunications monopole.

### Finding of Facts

The Board found that the Applicant was seeking a special use exception to erect a telecommunications monopole on a parcel South of Road 261, 300 feet East of Road 258. After a hearing, the Board made the following findings of fact:

1. The Applicant, Cingular Pennsylvania, LLC, was requesting a special use exception to erect a new communications monopole 150 feet in height, on a 137 acre parcel currently zoned AR1. The tower is expected to meet all required setbacks, and will be accessed by an existing farm road. The property is currently in agricultural use, and the Applicant has obtained permission for the tower from Delaware Farm Land Preservation.
2. The Applicant concluded that there were no structures in the area suitable for its purposes, and that the tower is necessary to bridge gaps in coverage.
3. Several individuals testified in opposition. Jeri Ludlam testified that the tower would be extremely close to her property and would affect property values. She was also concerned about aircraft in the immediate area and noise that might be generated from the tower and its maintenance. George Ames also testified in opposition, pointing out that the proposed location is at a fairly sizeable road intersection.
4. Jay Buck testified in opposition, and expressed a belief that the tower would be dangerous to the area. Because of frequent fog, he believed that small aircraft common to the area would be in danger, and also felt that an unsightly tower would be too close to residential areas. Both he and the previous witness testified that they had no trouble utilizing their cellular phones in the immediate area. Fran Cardaci testified in opposition to the Application and pointed out that there were towers located Southwest of Route 9 and Route 1, roughly 2 miles away. She also pointed out that the Applicant had just received approval from another tower on Route 24, and also pointed out Cingular's advertising that coverage is good in the State of Delaware.
5. In rebuttal, the Applicant testified that it would not go to the expense of erecting a new tower if it were unnecessary, and that there are no residential dwellings within 400 feet of the proposed location.
6. The Board determined that the proposed location was inappropriate for a communications tower, and that it would adversely affect uses of neighboring into adjacent properties.

The Board denied the requested special use exception.

BOARD OF ADJUSTMENT
OF SUSSEX COUNTY

*Dale Callaway*

Dale Callaway
Chairman